**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: ) | | Chapter 11 |
| ) | | |
| BANBURY METROLOFTS, LLC, ) | | Case No. 12 B 33300 |
| ) | | |
| Debtor. ) | | |
| _____ ) | | |
| ) | | Judge Carol A. Doyle |
| BANBURY METROLOFTS, LLC, ) | | |
| Plaintiff, ) | | |
| v. ) | | Adversary No. 12 A 01614 |
| ) | | |
| BMO HARRIS BANK, N.A., ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION**

Banbury Metrolofts, LLC, a chapter 11 debtor, filed this adversary proceeding against BMO Harris Bank, N.A., seeking to avoid the lien BMO Harris asserts against the debtor's property and a declaration that BMO Harris is not the successor to the original lender in any event. Count I alleges that the mortgage upon which BMO Harris relies should be avoided under section 544(a)(3) of the Bankruptcy Code, 11 U.S.C. § 544(a)(3), because the mortgage that was recorded did not state the interest rate or the maturity date of the loan. In Count II, the debtor seeks a declaration that BMO Harris does not have a valid assignment of the note and mortgage so its secured claim should be valued at zero under 11 U.S.C. § 506(d). In Count III, the debtor alleges that BMO Harris is not the owner of the note and mortgage and seeks a declaratory judgment that BMO Harris has no valid lien on the debtor's property. BMO Harris filed a motion to dismiss all three counts. The court denied the motion with respect to Counts II and III without

briefing but set a briefing schedule regarding Count I.  For the reasons set forth below, the motion to dismiss Count I will be granted because the debtor has failed to state a claim.

**I.     Background**

The debtor alleges in the complaint that BMO Harris filed a foreclosure action in state court to foreclose on the debtor's property pursuant to a mortgage the debtor granted in favor of Amcore Bank, N.A., that was recorded in February 2007.  A copy of the mortgage is attached to the complaint.  Before the state court ruled on a motion to appoint a receiver, the debtor filed for bankruptcy.  The debtor alleges that, as debtor in possession, it can assert all the rights of a trustee serving in a chapter 11 case, 11 U.S.C. § 1107(a), including the right to avoid the mortgage lien under section 544(a)(3) of the Bankruptcy Code, 11 U.S.C. § 544(a)(3).   Section 544(a)(3) allows a trustee to avoid any transfer of property of the debtor:

> without regard to any knowledge of the trustee or of any creditor . . . that is voidable by -
>
> . . .
>
> (3) a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

11 U.S.C. § 544(a)(3).  Thus, the debtor stands in the shoes of a bona fide purchaser who has recorded its interest in the property at the time the bankruptcy case was filed, regardless of whether there is any such purchaser.

The debtor alleges in Count I that such a bona fide purchaser would have priority over the holder of the mortgage upon which BMO Harris relies because the mortgage recorded by Amcore

did not comply with the requirements of section 11 of the Illinois Conveyances Act, 765 ILCS 5/11.  The debtor contends that section 11 requires that the mortgage state the interest rate and maturity date of the loan to be effective and that neither element is disclosed in the mortgage.  The debtor therefore seeks avoidance of the lien under section 544(a)(3).

BMO Harris moved to dismiss Count I, arguing the Illinois Conveyances Act does not require a mortgage to state the interest rate and maturity date to provide constructive notice of the lien to a bona fide purchaser without actual knowledge of the lien.  BMO Harris also contends that Illinois courts have long recognized that the mortgage can incorporate information from other documents.  It argues that the mortgage and note here did cross-reference each other and that the note clearly states the interest rate and maturity date.  It seeks dismissal on the basis that the debtor cannot prevail on Count I as a matter of law.  The court agrees.

### II.  Standard on Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to adversary proceedings through Rule 7012 of the Federal Rules of Bankruptcy Procedure.  The court must accept the well-pleaded allegations of the complaint as true and draw all inferences in favor of the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007).  A complaint must contain allegations that show that it is plausible that the plaintiff is entitled to relief.  *Tamayo v. Blagojevich*, 526 F.3d 1075, 1082-83 (7th Cir. 2008).

In deciding a motion to dismiss, the court may consider the pleadings, including the complaint, any attached exhibits, and supporting briefs.  Fed. R. Civ. P. 10(c); *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).  "Documents attached to a motion to

Case 12-01614    Doc 26    Filed 03/25/13    Entered 03/25/13 12:46:09    Desc Main
            Document      Page 4 of 11

dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *see also 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

### III. Section 11 of the Illinois Conveyances Act

Whether the debtor states a claim in Count I depends on whether section 11 of the Illinois Conveyances Act requires that a mortgage state the interest rate and maturity date of the underlying debt to give constructive notice to subsequent purchasers. The debtor argues that a mortgage must state the interest rate and maturity date to give constructive notice under section 11 and that a mortgage that fails to do so is ineffective as to subsequent purchasers without knowledge of the mortgage. The debtor cites one bankruptcy case that directly holds this, *Richardson v. Gifford State Bank (In re Crane)*, Nos. 11-90592 (Bankr.), 11-9067 (Adv.), 2012 WL 669595 (Bankr. C.D. Ill. Feb. 29, 2012). It also cites other bankruptcy cases that it contends support this general proposition. *E.g., Bank of Ill. v. Covey (In re Shara Manning Props., Inc.*, 475 B.R. 898 (Bankr. C.D. Ill. 2010); *Peterson v. Berg (In re Berg)*, 387 B.R. 524 (Bankr. N.D. Ill. 2008).

BMO Harris cites cases holding that the provisions in section 11 regarding interest rate and maturity date are not mandatory; they merely provide a suggested form that may be used for mortgages, including the recently decided opinion in *Bruegge v. Farmers State Bank of Hoffman (In re Klasi Properties, LLC)*, Nos. 12-60013 (Bankr.), 12-6028 (Adv.), 2013 Bankr. LEXIS 243 (Bankr. S.D. Ill. Jan. 18, 2013). It contends that section 11 operates at most to provide a guaranteed safe harbor for giving constructive notice. After the debtor filed its reply brief, the

district court reversed the bankruptcy court's decision in *Crane* and agreed with the *Klasi* court that the suggested elements for a mortgage in section 11 are not mandatory. *Gifford State Bank v. Richardson (In re Crane)*, No. 12-CV-2146, 2013 WL 772829 (C.D. Ill. Feb. 28, 2013). Thus, *Crane*, the only case directly holding that a mortgage that does not specifically state the maturity date and the interest rate fails to give constructive notice and can be avoided by a trustee solely on this basis, has been reversed.

This court agrees with and adopts the reasoning in *Klasi* and the district court's opinion in *Crane*. As both courts held, the provisions of section 11 of the Conveyances Act are not mandatory. Section 11 provides as follows:

> § 11. Mortgages of lands *may* be *substantially* in the following form:
>
> The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (here insert description thereof), situated in the County of . . ., in the State of Illinois.
>
> Dated (insert date).
>
> (signature of mortgagor or mortgagors).
>
> [* * *]
>
> Such mortgage, when otherwise property executed, *shall* be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified.

765 ILCS 5/11 (emphasis added).

As the district court in *Crane* and the *Klasi* court noted, the term "may" is permissive; the term "shall" is mandatory. *In re Crane*, 2013 WL 772829, at *3; *In re Klasi*, 2013 Bankr. LEXIS

243, at *13-14. The word "substantially" in section 11 reinforces that the form suggested is not mandatory. Thus, the statute on its face does not make the inclusion of the terms listed in the suggested form mandatory. *In re Crane*, 2013 WL 772829, at *3. The first paragraph of section 11 may operate as a safe harbor provision, making mortgages that contain all the listed information unassailable. *Id.*; *see also In re Shara Manning*, 475 B.R. at 910. This provision does not mandate, however, that mortgages that do not contain all the information in the suggested form must be deemed insufficient to give constructive notice to a subsequent bona-fide purchaser without knowledge of the prior lien. *Id.*

The Illinois legislature has made this abundantly clear in a recent amendment to section 11, presumably passed in response to the bankruptcy court decision in *Crane*. The amendment provides, among other things, that:

> [t]he provisions of subsection (a) regarding the form of a mortgage are, *and always have been*, permissive and not mandatory. Accordingly, the failure of an otherwise lawfully executed and recorded mortgage to be in the form described in subsection (a) in one or more respects, including the failure to state the interest rate or the maturity date, or both, shall not affect the validity or priority of the mortgage, nor shall its recordation be ineffective for notice purposes regardless of when the mortgage was recorded.

Ill. Pub. Act 97-1164 (effective June 1, 2013) (to be codified at 765 ILCS 5/11(b)). Thus, as noted in *Crane* and *Klasi*, this amendment supports the conclusion that the requirements of section 11 are not mandatory. Although the amendment to section 11 is not effective until June 2013, and subsequent changes in law cannot affect the trustee's rights as of the commencement of the bankruptcy case, this amendment is consistent with the text of section 11 as it existed when the debtor's bankruptcy case was filed and is persuasive evidence of legislative intent. *In re Crane*, 2013 WL 772829, at *7; *In re Klasi,* 2013 Bankr. LEXIS 243, at *14-15.

BMO Harris also asserts that Illinois law recognizes that the mortgage may incorporate other documents that include the details of the loan. As the district court in *Crane* noted, Illinois courts hold that "[w]hen a note and the mortgage given to secure it mutually refer to each other, they must be construed together." *In re Crane*, 2013 WL 772829, at *7 (quoting *Metro. Life Ins. v. Kobbeman*, 260 Ill. App. 508, 512 (Ill. App. Ct. 1931); *see also In re Bailey*, 999 F.2d 237, 242 (7th Cir. 1993). In this case, the mortgage states that it is securing a debt up to $20.4 million. The mortgage refers multiple times to the "Note." The mortgage defines "Note" as "any promissory note or other evidence of indebtedness from Borrower to Lender, together with all renewals of, extensions, modification of, refinancing of, consolidations of, and substitutions for the promissory note or agreement." It then states: "Notice to Grantor: The note contains a variable interest rate." The loan number of the underlying note is listed on the top of each page of the mortgage except the first page. The promissory note between the debtor and Amcore with the same loan number identifies a principal amount of $10,239,900 and an initial interest rate of 8.25%.[1] The note refers to a mortgage dated February 12, 2007 (the date of the mortgage granted by the debtor to Amcore) on real property located in Cook County, Illinois. It also identifies that the purpose of the loan is the development of forty-four residential units and retail units located at 10-12 South Dunton Ave,. Arlington Heights, Illinois, the property on which the debtor granted the mortgage to Amcore. Thus, the note and mortgage cross-reference each other and should be

---

[1]The debtor attached a copy of the mortgage to the complaint but not the note. The complaint refers to the note in Paragraph 15 and various other places, and the note is central to the debtor's claims. BMO Harris referred to the mortgage and note in its motion to dismiss and attached a copy of the note as Exhibit 1 to its memorandum in support of the motion. The debtor did not object to consideration of the note on this motion to dismiss, and in fact referred to the note itself. The court may consider the note in ruling on the motion to dismiss.

construed together for purposes of section 11.  Together they contain all the information listed in the form suggested in section 11, including the exact amount of the loan, the initial interest rate, a statement that the interest rate is variable, and the maturity date.  The mortgage and note in this case satisfy the requirements of Illinois law for giving constructive notice to all subsequent purchasers.  *See In re Klasi*, 2013 Bankr. LEXIS 243, at *5-12.

     The debtors arguments to the contrary are not persuasive.   First, it relies on two Illinois Supreme Court decisions, neither of which compel a different result.  In *Caraway v. Sly*, the court held that an outright conveyance of property could not be construed as a mortgage, noting that the two essential characteristics of a mortgage are the existence of a debt and a conveyance with an intention to secure that debt.  222 Ill. 203, 206 (1906).  The court concluded that there was no debt owed to support a mortgage.  In *Bullock v. Battenhausen*, 108 Ill. 28 (1883), the court held that a mortgage that contained no statement of the amount of the debt owed did not charge a subsequent bona fide purchaser with constructive notice.  The court made the odd statement that "[t]he policy, though not the letter, of our statues requires, in all cases, a statement upon the record of the amount secured," thus perhaps acknowledging that the text of the predecessor to section 11 was not mandatory.  *Id.* at 37.  The court was then quick to point out that the case before it was "nowise analogous to cases wherein the debt is described by reference to another instrument."  *Id.*   It thus acknowledged that the Illinois statute in force at the time, which had language similar to section 11, did not require a recitation of the amount of the debt when the amount could be determined by looking at other documents.  Illinois courts have subsequently recognized that when a mortgage secured potential future advances not to exceed the amount of indebtedness listed on the mortgage, the exact amount of the indebtedness need not be specified

in the mortgage. *See, e.g.*, *Skatch v. Gee*, 137 Ill. App. 3d 216, 484 N.E.2d 441, 443 (Ill. App. Ct. 1985); *In re Klasi,* 2013 Bankr. LEXIS 243, at *7; *In re Berg*, 387 B.R. at 560. In this case, the complaint alleges only a failure to state the interest rate and maturity date. Neither *Carraway* nor *Bullock* supports the debtor's argument that the failure to list these two elements requires a court to conclude that the mortgage did not provide constructive notice to a bona fide purchaser without knowledge of the prior lien.

The bankruptcy cases relied upon by the debtor are also distinguishable from this case. In *Berg*, the court concluded that the mortgagee had not proved by a preponderance of the evidence that its note was secured by the recorded mortgage. 387 B.R. at 561. The court therefore avoided the mortgage because it was insufficient to charge a hypothetical bona fide purchaser with constructive notice. *Id.* To the extent the *Berg* court suggested that the mortgage must contain all the information in section 11 to give constructive notice for purposes of section 544(A)(3), this court declines to follow it. In *Shara Manning*, the court discussed the three types of notice that can be provided to purchasers of real property under Illinois law: actual notice, inquiry notice, and constructive notice. The court found that the buyer in question had actual notice so the court need not decide whether the mortgage contained enough information to give constructive notice. The court noted that section 11 is best seen as establishing a safe harbor for those seeking to give constructive notice but declined to determine whether the mortgage in that case was sufficient to provide constructive notice. *In re Shara Manning*, 475 B.R at 910. Another case cited by the debtor, *Peoples Nationals Bank v. Jones*, 482 B.R. 257 (S.D. Ill. 2012), involved whether an ambiguous cross-collateralization clause put a purchaser on inquiry notice, not whether the mortgage must state the amount of interest and the maturity date to give constructive notice.

The debtor also argues that the mortgage fails to meet the requirements of Illinois common law for a valid mortgage. There is no common law requirement independent of the statutory requirements of the Conveyances Act.

Finally, the debtor seems to be making a new argument not alleged in the complaint - that the mortgage does not adequately disclose the amount of the debt. The debtor acknowledges that the mortgage does in fact contain a specific sum for the maximum amount of indebtedness - approximately $20 million. It states that this amount is approximately double of the actual indebtedness at the time the mortgage was recorded. As noted above, the amount of the indebtedness may also be set forth in a note that is referred to in the mortgage. Illinois courts also recognize that the exact amount of the indebtedness need not be stated when there is the possibility of future advances of money secured by the property. *E.g., Skatch v. Gee*, 484 N.E.2d at 443. In this case the mortgage clearly states that it secures future advances by the lender up to a maximum of approximately $20 million. The debtor cites no authority for the proposition that an identification of a maximum possible debt that is more than the actual debt at the time the mortgage was recorded invalidates the mortgage and negates constructive notice to subsequent purchasers. The court rejects this argument as a matter of law for the same reasons discussed above with respect to interest rate and maturity date, and because the debtor has failed to allege in the complaint that the mortgage does not adequately identify the amount of the debt.[2]

---

[2] The court notes that the amendment to section 11 provides that "the provisions of subsection (a) regarding the form of mortgage" have always been permissive, not mandatory. It then provides that the failure of the mortgage to be in the form described in subsection (a) "in one or more respects, including the failure to state the interest rate or the maturity date or both" shall not affect the validity or priority of the mortgage. The amendment thus makes it clear that the failure to include *any one or more* of the elements in the suggested form, including the amount owed, does not invalidate the mortgage.

As the *Klasi* court noted, the purpose of § 544(a)(3) was to "cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." 2013 Bankr. Lexis 243, at *26 n.14 (*citing* 5 *Collier on Bankruptcy* ¶ 544.02[2]*,* 544-6 (16th ed. 2012); *Canney v. Merchants Bank (In re Canney)*, 284 F.3d 362, 374 (2nd Cir. 2002)). Section 544(a)(3) was not intended to be used to turn a secured creditor holding a recorded mortgage that gave notice to subsequent purchasers of a substantial debt secured by the property into an unsecured creditor. Here, the debtor admits that it borrowed over $10 million from Amcore, that it granted Amcore a mortgage, and that Amcore recorded the mortgage reflecting a debt that would not exceed $20 million long before the debtor filed for bankruptcy. The trustee, and any bona fide purchaser without knowledge, had constructive notice of the existence of this mortgage securing a debt up to $20 million.

### IV.    Conclusion

Count I alleges that the mortgage fails to state the interest rate and the maturity date. The Amcore mortgage was sufficient as a matter of law to provide constructive notice of the lien of the owner of the debtor's promissory note up to the amount of $20 million. A bona fide purchaser without notice could not prevail over the owner of the note and mortgage under Illinois law. The debtor therefore fails to state a claim to avoid the mortgage lien under section 544(a)(3). Count I will be dismissed.

Dated:    March 25, 2013

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge